IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

VERNA L. KESTER                                                           PLAINTIFF

vs.                                  Civil No. 5:21-cv-05086

KILOLO KIJAKAZI, Acting Commissioner,[1]
Social Security Administration                                            DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Verna Kester, brings this action pursuant to 42 U.S.C § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her claims for a period of disability and disability insurance benefits ("DIB") under the

provisions of Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423(d)(1)(A).  In this

judicial review, the Court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff filed her second application for DIB on July 24, 2018, alleging an onset date of

December 30, 2017, and alleging an amended onset date of October 28, 2018.  (Tr. 10, 13, 35-36,

80-81, 100-101).  She was 49 years old on the alleged onset date and 50 years old on the amended

onset date.  (Tr. 36, 80, 100).  She had past relevant work ("PRW") as a property manager and

photo finisher.  (Tr. 20, Finding 6).

The Commissioner denied her application initially and on reconsideration.  (Tr. 123-125,

127-128).  At Plaintiff's request (Tr. 129-136), an Administrative Law Judge ("ALJ") held an

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021.  Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this
suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the
Social Security Act, 42 U.S.C. § 405(g).

administrative hearing on July 29, 2020, *via* telephone.  (Tr. 29-60).  Plaintiff was present and represented by counsel.

On October 5, 2020, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, right shoulder rotor cuff syndrome, and fatigue.  (Tr. 13, Finding 3).  The ALJ determined that Plaintiff's medically determinable mental impairment "nonsevere" as it causes no more than a "mild" limitation in any of the functional areas and the evidence indicates nothing more than a minimal limitation in her ability to perform basic work activities.  (Tr. 15).  The ALJ concluded Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15, Finding 4).  The ALJ determined that Plaintiff retained the RFC to do the following:

> After careful consideration of an entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can occasionally bilateral overhead reach, can occasionally climb ramps and stairs, ladders, ropes or scaffolds, balance, stoop, kneel, crouch and crawl.  (Tr. 15, Finding 5).

With the assistance of a vocational expert ("VE"), the ALJ found Plaintiff could perform work as a cashier II, office helper, and canning machine tender.  (Tr. 21).  The ALJ concluded Plaintiff had not been under a disability as defined by the Act from October 28, 2018, through the date of the ALJ's decision, October 5, 2020.  (Tr. 21-22, Finding 7).

The Appeals Council denied Plaintiff's request for review on March 9, 2021.  (Tr. 1-4).  She subsequently filed this action on May 12, 2021.  (ECF No. 1).  This matter is before the undersigned for report and recommendation.  Both parties have filed appeal briefs (ECF Nos. 12, 13), and this case is ready for decision.

II.     **Applicable Law:**

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A claimant must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

3

gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.   20 C.F.R. § 404.1520(a)(4).   The fact finder only considers a claimant's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached.   20 C.F.R. § 404.1520(a)(4)(v).

**III.   Evidence Presented:**

This Court's review of the medical record evidence reveals the following:

On October 15, 2017, Plaintiff saw Jillian Graves, APRN, ("Graves") for right-sided neck pain.  (Tr. 436-439).  Plaintiff's physical exam was mostly normal, with Plaintiff manifesting a full range of motion of the neck and right shoulder with tenderness to palpation over her right neck and shoulder.  (Tr. 437).  Graves assessed Plaintiff with cervical muscle pain, neck pain, and chronic right shoulder pain with the impression of mild cervical spondylosis most evident at C5-7.  (Tr. 438-439).

Plaintiff was seen at Community Clinic Rogers Medical on February 5, 2018, complaining of right-sided pain, and seeking a thyroid check.  (Tr. 461-463).  Plaintiff reported experiencing abdominal pain for one year with the pain was located on her right but on occasion, radiating to the left.  (Tr. 461).  According to Crystal Hensley, P.A., ("Hensley"), Plaintiff's physical exam was mostly normal except her abdomen was soft and mildly tender along the lower right and left quadrants.  Plaintiff was assessed with abdominal pain and fatigue.  (Tr. 462).

On March 8, 2018, Plaintiff was seen in the ER at Mercy Hospital Northwest Arkansas complaining of chronic pain.  (Tr. 527).  Plaintiff's physical exam was mostly normal; however,

she exhibited tenderness in both shoulders and both wrists. (Tr. 529). Aaron Poteat, P.A. ("Poteat") noted tenderness in Plaintiff's knees which was believed chronic. Poteat prescribed Flexeril (10 mg three times daily) as needed for muscle spasms and diagnosed Plaintiff with chronic pain. (Tr. 530).

Plaintiff saw Hensley on April 30, 2018, complaining of pain in her shoulders, wrists, neck, and lower back that was persistent and worsening. (Tr. 458). Plaintiff's physical exam revealed a slower than usual gait and mild to moderate pain. (Tr. 459). Hensley assessed Plaintiff with polyarthritis, cervicalgia, and low back pain, and recommended Plaintiff continue with ibuprofen and low impact exercise.

On June 27, 2018, Plaintiff was seen at Smith Family Chiropractic and Acupuncture for a consultative appointment. (Tr. 441-449). According to the neck disability index and the revised Owestry index, Plaintiff did not check any boxes in any of the sections that inquired of how much her low back and neck pain affected her ability to perform daily activities. (Tr. 441-442). On the questionnaire, Plaintiff rated her overall health as fair and noted she performed light exercise. (Tr. 443). Her present conditions consisted of headaches, neck pain, upper back pain, low back pain, shoulder pain, elbow/arm pain, wrist pain, hand pain, hip pain, knee pain, abnormal weight gain/loss, abdominal pain, general fatigue, and frequent urination. She stated she experienced her symptoms constantly (76-100% of the time) and described her pain as achy, burning, numb, and tingly. (Tr. 444). Plaintiff's symptoms were alleged to be worsening, rating her pain 10 out of 10. Plaintiff reported pain interfered with her work and her sleep, caused tiredness and lack of energy, and prevented her from living life in that people easily get on her nerves and she cannot concentrate.

On July 20, 2018, Plaintiff returned to Community Clinic Rogers Medical with complaints of right side and back pain.  (Tr. 451-452).  Her physical exam was mostly normal except for a soft abdomen and tenderness along her right lower quadrant.  (Tr. 452).  Hensley assessed Plaintiff with right lower quadrant pain and referred her to a gastroenterologist.

On August 29, 2018, Plaintiff was seen by Ben De Miranda, M.D., for back pain.  (Tr. 482).  Plaintiff complained of burning pain to her neck, shoulders, and lower middle back.  Plaintiff manifested a decreased range of motion in her neck in all directions and had mild bilateral lower lumbar muscle tenderness; however, she displayed a full range of motion and strength of both upper and lower extremities, and a negative straight leg raises bilaterally.  (Tr. 483).  Plaintiff was assessed with osteoarthritis of the cervical spine, unspecified spinal osteoarthritis complication status, lesion of vertebra, low back pain, and other chronic pain.  Dr. De Miranda prescribed Meloxicam (15 mg once daily) and recommended a repeat MRI in six months.  Dr. De Miranda also referred Plaintiff to physical therapy at Total Spine for cervical and lumbar programs.

On September 10, 2018, Plaintiff presented to Mercy Clinic for physical therapy with Kelly Edwards, PT, ("Edwards").  (Tr. 523).  Plaintiff complained of neck pain and right shoulder pain that moved to the left shoulder as well as migraine headaches.  She also reported low back pain, knee pain, and right hip pain.  Her prior level of functioning was independent and active; however, she was now unable to exercise and had decreased endurance with activities of daily living.  Plaintiff's functional limitations included decreased ability to use her neck to look down, read, drive, and other functional activities that require cervical range of motion without pain and limitation.  (Tr. 524).  Plaintiff's cervical extension and side bending were decreased; however, her shoulder abduction was within normal limits.  Her shoulder rotation (internal and external) was full 5/5 strength, compression distraction test was negative, and Spurling's test was negative;

however, the Hawkins-Kennedy test was positive on the right shoulder.  (Tr. 525).  Plaintiff exhibited a decreased cervical spine range of motion, strength and stability, and a decreased ability to use her cervical spine to look up and down, work at the computer, read, drive, and complete other activities without pain or limitation.  Plaintiff also scored a 64 on the neck disability index. Plaintiff's long-term goals included decreasing pain, increasing range of motion in her cervical spine, increasing strength, and among other goals, to improve Plaintiff's neck disability index score from a 64 to 40 or less.

Plaintiff attended physical therapy on September 18, 20, and 27 and on October 2, 2018, with Nicholle Gerring, PTA, ("Gerring"), Edwards, and Stefanie Brown, PTA, ("Brown").  (Tr. 515-522).  On October 2, 2018, Brown questioned Plaintiff's home exercise program compliance because Plaintiff presented the same each visit.  Nonetheless, Plaintiff was instructed to continue her current treatment plan.  On October 4, 2018, Plaintiff returned to Mercy Clinic for physical therapy treatment and reported feeling good, and that her home exercises were going well.  (Tr. 514).  Edwards noted improvement. (Tr. 515).  Plaintiff underwent physical therapy again on October 15, 17, 22, 29 and 31, and on November 14, 2018. (Tr. 502-514).  Plaintiff continued to report elevated pain but responded positively to treatment.

On November 19, 2018, Plaintiff saw Dr. De Miranda with complaints of depression, stress, anxiety, sleeplessness, racing thoughts, and intermittent suicidal thoughts.  (Tr. 478).  She denied suicidal ideation at the time but expressed financial issues, world events and attending kidney and physical therapy appointment stressed her out.  Dr. De Miranda assessed Plaintiff with major depressive disorder, single episode, unspecified, and anxiety disorder, unspecified.  Dr. De Miranda referred Plaintiff for counseling but held off on prescribing any medication.  (Tr. 478-479).

Plaintiff underwent physical therapy on November 20, 27, and 29, and on December 4, 6, and 11, 2018.  (Tr. 495-501).  On December 11, 2018, Plaintiff saw Edwards for physical therapy at which time she was discharged.  (Tr. 494-495).

On January 7, 2019, Plaintiff presented to Waters Edge Counseling.  (Tr. 466).  Plaintiff's mood and affect was depressed.  Plaintiff completed the Beck Depression Inventory ("BDI") assessment and the results indicated moderate depression.

On January 15, 2019, Plaintiff returned to Dr. De Miranda complaining of joint pain, neck pain, shoulder pain, knee pain, and low back pain, mostly right-sided.  (Tr. 474).  A physical exam was mostly normal including a normal range of motion in Plaintiff's neck; however, she had anxious affect.  Dr. De Miranda assessed Plaintiff with menopausal vasomotor syndrome and lymphadenopathy of the right cervical region.  (Tr. 474-475).  Dr. De Miranda prescribed Climara Pro film extended release and referred Plaintiff to general surgery for further evaluation concerning her lymphadenopathy of the right cervical region.  (Tr. 475).   On the same date, Plaintiff returned to Waters Edge Counseling.  (Tr. 465-466).

A few days later and on January 23, 2019, Plaintiff returned to Edwards for a physical therapy session.  (Tr. 1075-1076).

Plaintiff returned to Waters Edge Counseling on January 29, 2019, appearing more alert and upbeat than previous sessions.  (Tr. 465).  Plaintiff reported this would be her last session and reported improvements such as the ability to stand up for herself and say no to others.

On February 7, 2019, Plaintiff was seen by Angela Buonagura, M.D., for right submandibular lymphadenopathy.  (Tr. 490).  Dr. Buonagura noted the condition has not changed since onset in 2013. Plaintiff had a skin lesion on the vulvar aspect of both hands at the thenar eminence and had bilateral plantar soft tissue lesion with left side being larger at 1.5 centimeters.

They were causing pain and discomfort and Plaintiff wanted them removed.  Plaintiff's physical exam was mostly normal except for her right submandibular area with prominent lymph node of 2 centimeters.  (Tr. 492).  Dr. Buonagura diagnosed Plaintiff with the following: rotator cuff syndrome of the right shoulder; rhomboid muscle strain; adnexal mass; status post laparoscopic; skin lesion of the hand; mass of both feet; and lymphadenopathy of the right cervical region. Plaintiff also had bilateral plantar soft tissue foot lesions and tiny 3-millimeter skin lesion on bilateral thenar eminence.  As a result, Dr. Buonagura referred Plaintiff to an orthopedist for her bilateral plantar soft tissue foot lesions.

Plaintiff saw Erica Jaramillo, APRN, ("Jaramillo") on February 12, 2019, complaining of right lower back pain, exacerbated by laying down, and urinary frequency.  (Tr. 472).  Plaintiff also complained of bilateral wrist and shoulder pain; however, Plaintiff advised the pain was not worsened by anything but was "just there."  Jaramillo assessed Plaintiff with urinary frequency, bad odor of urine, osteoarthritis of multiple joints, unspecified osteoarthritis type, and menopausal vasomotor syndrome.  (Tr. 473).  Jaramillo prescribed Diclofenac (75 mg twice daily) for arthritis pain and noted that Plaintiff tolerated ibuprofen well without problems.

Ten days later, on February 22, 2019, Plaintiff was seen by Robert Zimmerman, M.D., complaining of urinary frequency and nocturia.  (Tr. 487-488).  Plaintiff gets up many times at night and has sleep disruption.  (Tr. 488).  She used Myrbetriq 50 mg in the past with good success, but the medication is not covered by Medicaid.  She has tried multiple other medications with no success and was currently using Azo over-the-counter bladder control formula with some limited relief.  Plaintiff was negative for back pain, neck pain, joint pain, or swelling, and her physical exam was mostly normal.  (Tr. 489).  Dr. Zimmerman set up a cystoscopy with Botox and provided samples of Myrbetriq 50 mg to help until Plaintiff's next appointment.  (Tr. 490).

On April 11, 2019, Plaintiff presented to Community Clinic Rogers Medical for x-rays of her spine.  (Tr. 961).  James Brull, D.O., found normal alignment including the cervicothoracic junction in her thoracic spine and there was no evidence of fracture.  Minimal discogenic degenerative change was noted and there was no radiographic change from Plaintiff's reference exam.  Dr. Brull opined the x-ray of Plaintiff's thoracic spine showed no acute osseous abnormality.  Regarding Plaintiff's lumbar spine, Dr. Brull found her vertebral body heights were maintained with anterior cortical margins smooth and intervertebral disc spaces were relatively maintained.  In addition, alignment was normal and sacroiliac joints were normal.  Dr. Brull concluded the x-ray of Plaintiff's lumbar spine was normal.  Dr. Brull also performed x-rays of Plaintiff's cervical spine. (Tr. 675).  Dr. Brull concluded the cervical spine x-rays showed no acute osseous abnormality, but the degenerative changes had progressed since the reference exam conducted in September 2015.

The same date, Plaintiff was also seen by Tracy Fite, M.D., for low back pain, shoulder pain, neck pain, and frequent urination.  (Tr. 635).  Plaintiff's blood pressure was elevated but her physical exam was mostly normal including a normal range of motion in her extremities and a normal gait.  (Tr. 636).  Dr. Fite assessed Plaintiff with low back pain, cervicalgia, elevated blood pressure, screening for endocrine, nutritional, metabolic and immunity disorder, screening cholesterol level, thoracic degenerative disc disease, lumbar degenerative disc disease, and chronic right-sided low back pain with right-sided sciatica.  (Tr. 636).

On May 2, 2019, Plaintiff returned to Dr. Fite to review her labs.  (Tr. 629).  Plaintiff denied depression at the appointment, stating she failed physical therapy for her lower back and has sciatica on the right of her lumbar spine despite her x-ray depicting no osseous abnormalities.  Her

physical exam was normal, and she was assessed with hyperlipidemia and degenerative disc disease. (Tr. 631).

On May 17, 2019, Plaintiff returned to Community Clinic Rogers Medical for a follow up appointment. (Tr. 723). Dr. Fite noted Plaintiff had multilevel degenerative disc disease in her lumbar spine and right sided sciatica but identified no high-grade stenosis or foraminal stenosis in her cervical spine. Plaintiff's medications consisted of Mybetriq (50 mg once daily), fish oil (1000 mg once daily), and a multivitamin. Her physical exam was mostly normal, except her cervical spine exhibited decreased flexion and extension. (Tr. 724). Plaintiff's lateral rotation was 45 degrees, her side bending was 30 degrees, and her lumbar extension was 10 degrees. Plaintiff also exhibited a positive straight leg raise on her right leg. Dr. Fite assessed Plaintiff with degenerative cervical joint disease and referred Plaintiff to Mercy Pain Center for pain medication.

Plaintiff saw Loni Cooper, PT, ("Cooper") on May 22, 2019, for physical therapy. (Tr 993). Plaintiff's chief concern was cervical pain, reporting years of neck pain. (Tr. 944). She reported both relief and pain, both with sitting and any movement. She also reported numbness and tingling into her bilateral fingers accompanied by frequent headaches secondary to the pain. Plaintiff noted increased pain with cervical movements (looking up/down) but decreased pain with sleep, heat, and traction. Plaintiff's cervical range of motion was limited and caused pain during her physical exam, and she scored a 20 on her neck disability index. There was also tenderness to palpation along her cervical spine and her compression/distraction and spurling tests were positive. (Tr. 995).

Plaintiff participated in physical therapy on June 3, 6, 14, and 21, 2019. (Tr. 689-696).

Plaintiff saw Johnson on June 27, 2019, for neck and low back pain. (Tr. 685-686). Her pain was characterized as dull/aching, hot/burning, shooting, sharp/stabbing, numbness, spasming,

throbbing, tingling/pins and needles, and tightness with changes in severity but always present. Additionally, her pain was both aggravated and alleviated by "nothing in particular." (Tr. 686). Plaintiff exhibited tenderness to palpation of her cervical spine and tenderness of her lumbar spine, sacroiliac joint, and hips and pain with rotation of her hips.  (Tr. 687).  However, she had a full range of motion in her neck, normal gait, negative straight leg raises, and 5/5 muscle strength in her bilateral elbow flexors, wrist extensors, elbow extensors, finger flexors, and finger abductors, hip flexors, knee extensors, ankle dorsiflexors, long toe extensors, and ankle plantar flexors. Johnson assessed Plaintiff with cervical radicular pain, cervicalgia, other spondylosis, cervical region, degenerative disc disease, cervical, chronic bilateral low back pain, other spondylosis lumbar region, and degenerative lumbar disc disease.  (Tr. 689).  Johnson and Plaintiff discussed a cervical epidural steroid injection and a lumbar medial branch block with potential for radiofrequency ablation.  Plaintiff was instructed to continue home exercises.

The same date, Plaintiff underwent an x-ray of her lumbar spine.  (Tr. 698).  There was no evidence of a lumbar spine fracture or subluxation.  (Tr. 698-699).  Vertebral body heights and alignment were maintained, and mild degenerative disc disease was present with eburnation of the endplates.  (Tr. 699).  There was no significant disc space narrowing but there was mild facet arthropathy at L1-L2, L2-L3, and L3-L4, and moderate facet arthropathy at L4-L5 and L5-S1. Plaintiff's sacroiliac joints appeared intact, and her soft tissues were normal.

Plaintiff returned to physical therapy on June 28, and on July 1 and 10, 2019.  (Tr. 680-685).

Plaintiff presented to Community Clinic Rogers Medical on August 2, 2019, with pain on the right side of her lower abdomen and frequent urination lasting for one week.  (Tr. 717). Plaintiff's physical exam was normal including a normal range of motion of her extremities, a

normal gait, and good range of motion in her neck.  (Tr. 718-719).  Plaintiff had mild right pelvic pain and Dr. Fite assessed Plaintiff with hyperlipidemia, acute cystitis with hematuria, right lower quadrant abdominal pain, overactive bladder, abdominal discomfort, fatty liver, and hematuria. (Tr. 719).  Dr. Fite prescribed Atorvastatin Calcium Tablet (100 mg once daily) and Macrobid (100 mg once daily), ordered an ultrasound, and referred Plaintiff to a urologist.

Two days later, on August 4, 2019, Plaintiff presented to the Mercy Hospital Emergency department with abdominal and flank pain.  (Tr. 738).  Plaintiff reported persistent abdominal pain for one week accompanied by nausea without vomiting.  She had urinary symptoms of frequency and urgency and reported a hematuria.  Her physical exam was mostly normal including a normal musculoskeletal range of motion.  (Tr. 740-741).  Plaintiff reported lower abdominal pain in the left lower and right lower quadrants but nontender to palpation.  Plaintiff's labs were within normal limits, and she was prescribed Tramadol and Zofran.  (Tr. 741).

On October 7, 2019, Plaintiff presented to Community Clinic Rogers Medical after a car accident.  (Tr. 865).  Plaintiff had body aches, headaches, and blurry vision following a motor vehicle accident on September 30, 2019, in which her car was rear-ended.  Plaintiff's physical exam was normal, and her extremities manifested a normal range of motion.  (Tr. 867).  Dr. Fite assessed Plaintiff with the following: motor vehicle accident injuring restrained driver; change in vision; non-intractable headache, unspecified chronicity patter, unspecified headache type; neck pain; and midline back pain, unspecified back location, unspecified chronicity.  Dr. Fite instructed Plaintiff to go to the emergency room.

On the following day, on October 8, 2019, Plaintiff presented to Mercy Hospital Northwest complaining of neck pain.  (Tr. 816).  Plaintiff's neck was supple but displayed a decreased range of motion and she also exhibited lumbar back tenderness.  (Tr. 818).  John Antuna, D.O. concluded

Plaintiff strained her neck muscle and administered a 60 mg Toradol injection.  (Tr. 820).  Dr. Antuna also prescribed Metaxalone (800 mg three times daily).  Plaintiff was advised to follow up with her primary care provider and advised to return for any worsening symptoms.

The same date, Plaintiff underwent x-rays of her lumbar and cervical spine.  (Tr. 824-826). Phillip Hill, M.D., compared the lumbar x-ray from an exam performed on June 27, 2019, and opined that Plaintiff's lumbar spine demonstrated no compression deformity or spondylolisthesis. Disc space heights were maintained.  Dr. Hill's impression was mild apophyseal joint degenerative change of the lumbar spine.  Todd Mapes, M.D., found no evidence of a cervical spine fracture or subluxation.  (Tr. 826).  Plaintiff's vertebral body heights and alignment were maintained, and degenerative disc disease was moderate at C4-C5, C5-C6, and C6-C7.  Dr. Mapes noted there was moderate degenerative facet arthropathy throughout the cervical spine, unchanged.

On January 10, 2020, Plaintiff was seen by Angelica Crowley, CNP, ("Crowley") for frequent urination and was assessed with dysuria without pain.  (Tr. 860).

Plaintiff returned to Dr. Fite on May 21, 2020, complaining of neck pain, back pain, and knee pain.  (Tr. 854).  Recent imaging of Plaintiff's cervical spine revealed multilevel degenerative changes without high grade canal or foraminal stenosis at any level.  Plaintiff had not been to physical therapy and had not used medication for her spasm; Dr. Fite noted Plaintiff was not taking any medications at the time.  Plaintiff's physical exam was mostly normal, including a good range of motion of her neck.  (Tr. 855).  Dr. Fite assessed Plaintiff with lumbar degenerative disc disease, thoracic degenerative disc disease, cervicalgia, muscle spasm of the back, and gastroesophageal reflux disease.  (Tr. 855-856).  Dr. Fite prescribed Prednisone (10 mg) and referred Plaintiff to physical therapy and optimal pain management.  (Tr. 856).  Dr. Fite prescribed Omeprazole (20 mg once daily), Cyclobenzaprine (10 mg nighttime) and administered steroid injections.

Plaintiff returned to Dr. Fite ten (10) days later, on June 1, 2020. (Tr. 1272). She previously was seen in the emergency room and was diagnosed with fatty liver after experiencing right upper quadrant discomfort. She also had been having a lot of shoulder pains and reported she was going to start physical therapy the same day. Plaintiff's physical exam was normal, including a normal gait, and she was assessed with anterior chest wall pain, hepatic steatosis, right upper quadrant pain, anxiety, and hematuria. (Tr. 1273). Dr. Fite prescribed Citalopram (10 mg once daily).

## IV.   **Discussion**:

In her appeal brief, Plaintiff raises the following issues for reversal: (1) Whether the ALJ erred in failing to fully and fairly develop the record; and (2) Whether substantial evidence supports the ALJ's RFC determination. (ECF No. 12, pp. 2-9).

## A.   **Development of the Record**

Plaintif claims the ALJ erred by failing to fully and fairly develop the record in this case. (ECF No. 12, pp, 2-5). While Plaintiff's citation concerning the ALJ's duty to develop the record in this case is correct, the duty is not without limits. *See, e.g., Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004) (recognizing the ALJ's duty to develop the record in a social security disability case). Indeed, the record need only be a "reasonably complete record." *See Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). Here, upon review of the transcript in this matter, the Court finds the record "reasonably complete." Furthermore, to be entitled to a remand for the ALJ's failure to develop the record, Plaintiff must demonstrate prejudice. Here, Plaintiff has not made any such demonstration. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (holding "absent prejudice or unfairness, we will not remand.").

While an ALJ may order a physical consultative examination and/or re-contact Plaintiff's physicians, such actions are discretionary; the regulations simply grant the ALJ the authority to

employ this tool where existing medical sources do not contain sufficient evidence for the ALJ's determination. *See Matthews v Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).  Here, the Court sees no suggestion that the record was lacking or that an additional physical consultative examination was needed to provide an adequate record for the ALJ's determination.  The Court observes that the ALJ's decision contains a reasoned and thorough discussion of the medical opinions related to examinations and imaging, as well as Plaintiff's own testimony, which all provided substantial evidence for the RFC.

**B.      RFC**

Plaintiff argues the ALJ erred in her RFC determination.  (ECF No. 12, pp. 5-9).  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's capacity for work activity "on a regular and continuing basis."  20 C.F.R. § 404.1545(b), (c).  A disability claimant has the burden of establishing her RFC.  *Vossen*, 612 F.3d at 1016.  The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).  However, an ALJ is not required to adopt or include all limitations assessed by a medical source, even if the source is found to be persuasive.  *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir.

2011) (in making an RFC determination, "we do not require an ALJ to mechanically list and reject every possible limitation.").

In this matter, the ALJ determined Plaintiff retained the RFC to perform a modified range of light work.  (Tr. 15, Finding 5).  The ALJ imposed additional limitations in the RFC, including occasional bilateral overhead reach, occasionally climb ramps and stairs, ladders, ropes or scaffolds, balance, stoop, kneel, crouch, and crawl.  *Id*.  In addition, while Plaintiff clearly suffers from some degree of pain and discomfort, she has not established she is unable to engage in any and all gainful activity.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding, the mere fact working may cause pain or discomfort does not mandate a finding of disability).  The ALJ provided a thorough summary of Plaintiff's medical records and subjective allegations in this matter. The ALJ specifically determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of her subjective complaints were not entirely consistent with the medical record reflecting conservative treatment, and do not generally support Plaintiff's alleged loss of functioning.  (Tr. 18).   An ALJ may decide within a "zone of choice," and reversal is unwarranted simply because some evidence might support a different conclusion. *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009).

Although Plaintiff had some exams with abnormal findings, she had many normal exams that included unremarkable findings and where Plaintiff stated that physical therapy and/or other treatments helped her pain.  (For a few of many examples, see Tr. 16-18, 493-494, 505-506, 687-688, 718-719, 740-741, 795-796, 866-867, 1024-1025, 1052-1053).  In Plaintiff's Function Report from March 2019, she reported engaging in activities such as hiking, exercising, paying bills, going to the park, driving a car, cleaning, cooking, mowing, doing laundry, preparing meals, walking her dog, babysitting her grandsons occasionally, and shopping in stores a couple times a week, as well

17

as noting she needed no assistance with personal care. (Tr. 311-318). In a Function Report from August 2019, Plaintiff described similar activities and stated she shopped in stores for one to three hours one to two times per week, does laundry, mows the lawn, prepares her own meals, goes to church, visits with others, and babysits her grandsons once a month. (Tr. 339-346). "[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

Plaintiff's capacity to perform modified light work is also supported by the fact that Plaintiff's examining physicians did not place functional restrictions on her activities that would preclude her RFC for the period in question. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Upon review, the Court finds no basis for reversal. The ALJ relied upon the findings of consulting physicians in addition to the record as a whole when assessing Plaintiff's RFC. (Tr. 28-41). Such a reliance is entirely proper. *See Casey v. Astrue,* 503 F.3d 687, 692-94 (8th Cir. 2007) (recognizing an ALJ may properly rely on a state agency medical consultant's opinion over the unsupported opinions of treating and examining physicians).

## V.    Conclusion:

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties**

**that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of July 2022.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE